1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
2     - - - - - - - - - - - - - - X
        UNITED STATES OF AMERICA,    :    22-CR-00075(ENV)
3                                    :
                                     :
4                                    :    United States Courthouse
              -against-             :    Brooklyn, New York
5                                    :
                                     :
6                                    :    March 16, 2022
                                     :    4:00 p.m.
7       LIONEL HANST,                :
                                     :
8              Defendant.            :
      - - - - - - - - - - - - - - X
9
              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10         BEFORE THE HONORABLE ERIC N. VITALIANO
              UNITED STATES SENIOR DISTRICT JUDGE
11

12                   A P P E A R A N C E S:

13   For the Government:        BREON PEACE, ESQ.
                                Acting United States Attorney
14                              Eastern District of New York
                                271 Cadman Plaza East
15                              Brooklyn, New York 11201

16                         BY:  JONATHAN LAX, ESQ.
                                DEREK ETTINGER, ESQ.
17                              ADAM SCHWARTZ, ESQ.
                                Assistant United States Attorneys.
18

19   For the Defendant:         ROPES & GRAY LLP
                                1211 Avenue of the Americas
20                              New York, New York 10036

21                         BY:  BRIAN BLAIS, ESQ.
                                SEAN SEELINGER, ESQ.
22                              RYAN ROHLFSEN, ESQ.

23
     Court Reporter:            DENISE PARISI, RPR, CRR
24                              E-mail: DeniseParisi72@gmail.com

25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.

1          (In open court.)

2          THE COURTROOM DEPUTY:  All rise.

3          Court is now open.  The Honorable Eric N. Vitaliano

4   is now presiding.  Case on the calendar is USA versus Lionel

5   Hanst, Case Number 22-CR-75 on for a status conference.

6          Will the attorneys please note their appearance

7   beginning with Government counsel.

8          MR. LAX:  Good afternoon, Your Honor.

9          Jonathan Lax, Derek Ettinger, and Adam Schwartz on

10  behalf of the Government.

11         THE COURT:  Good afternoon to all.

12         MR. BLAIS:  Good afternoon, Your Honor.

13         Brian Blais for Mr. Hanst who is to my immediate

14  right, and I'm joined by my colleagues Ryan Rohlfsen and Sean

15  Seelinger.

16         THE COURT:  And good afternoon, and welcome to all

17  of you as well.

18         MR. ROHLFSEN:  Thank you, Your Honor.

19         MR. SEELINGER:  Thank you.

20         THE COURT:  We also have a CJA attorney who needs to

21  note his appearance for the record.

22         MR. RICO:  Yes, Your Honor.  Good afternoon.

23         Anthony Rico.  Today is my duty day, and I'm here at

24  the your direction.

25         THE COURT:  Thank you, Mr. Rico.  We appreciate your

1    service today and all the service that our CJA panel provides

2    our court throughout the year.

3              THE COURTROOM DEPUTY:  All parties are present,

4    including defendant.

5              THE COURT:  All right.

6              So there are a number of housekeeping items that I

7    guess we have to get through, and I chuckle at the thought if

8    we had to do all of this by way of Zoom, I think we probably

9    would be here until tomorrow; but, fortunately, we are in

10   person -- and hopefully that trend will continue -- and I will

11   take Mr. Lax's advice as we go along -- it seems to me, in the

12   order of things, that the extradition waiver should come

13   first.

14             Does that make sense?

15             MR. LAX:  I think, Your Honor -- I don't know that

16   it matters in terms of timing, I'm certainly happy to do that

17   now, I think it's linked with bail, so I think it could maybe

18   wait until bail, and we can proceed with the Curcio, but if

19   the Court wants to proceed with the extradition waiver now, I

20   see no reason not to do it.  It's a long way of saying I

21   agree.

22             THE COURT:  Okay.  I guess it explains how he's

23   here.

24             MR. LAX:  So the extradition waiver is, sort of,

25   more of a forward-looking document, Your Honor.

1    THE COURT:  Is it forward-looking?

2    MR. LAX:  Yes.

3    THE COURT:  If it's forward looking, then it's okay

4    to wait.

5    MR. LAX:  Okay.

6    THE COURT:  I wasn't sure who was waiting on this

7    thing and what order we should proceed.

8        So that being the case, we will then proceed to

9    another housekeeping matter, and that is the -- this is the

10   first time that this matter is on before me, and so we will

11   take another housekeeping matter, and I always refrain from

12   making any editorial comments about this housekeeping matter

13   other than to say we religiously follow the protocol remarks

14   that seem to be approved in the Second Circuit, which means

15   they have to be -- we read them cautiously, and since my

16   vision does not permit that, I will ask my law clerk and

17   deputy clerk of the court to read Criminal Rule 5(f) advisory

18   to Government counsel.

19       THE CLERK:  I direct the prosecution to comply with

20   this obligation under *Brady v. Maryland* and its progeny to

21   disclose to the defense all information, whether admissible or

22   not, that is favorable to the defendant material either to

23   guilt or punishment and known to the prosecution.  Possible

24   consequences for non-compliance include dismissal of

25   individual charges or the entire case, exclusion of evidence,

1    and potential discipline or court sanctions on the attorneys

2    responsible.  I will be entering a written order more fully

3    describing this obligation and the possible consequences of

4    failing to meet it, and I direct the prosecution to review and

5    comply with that order.

6         Does the prosecution confirm that it understands its

7    obligations, and will you fulfill them?

8         MR. LAX:  Yes, Your Honor.

9         THE COURT:  Thank you very much, Mr. Lax, and indeed

10   we will enter that order at some point later today.

11        That, I think, takes care of the formal -- without

12   relationship to the merits of any particular case --

13   housekeeping; and now I understand from the letter submitted

14   by the Government, the Government believes that Curcio hearing

15   is appropriate in this matter, and therefore I will hear from

16   Mr. Lax on that.

17        MR. LAX:  Yes, Your Honor.  So we submitted our

18   letter on February 24th in which we outlined a third-party fee

19   arrangement for the Court, and, of course, the Court has that

20   filing, but we think, sort of, given that arrangement,

21   including the individual in connection with that arrangement,

22   that Curcio hearing would be appropriate as set forth in our

23   letter.

24        THE COURT:  All right.  I will say it's rather

25   tenuous, based on my listening to the letter, but we do have

1  Mr. Rico present.

2        Let me inquire of you, Mr. Rico.

3        Have you had an opportunity to meet with Mr. Hanst

4  privately?

5        MR. RICO:  Yes.  Good afternoon, Your Honor.  I did

6  have an opportunity to meet with Mr. Hanst prior to the

7  proceedings today.  I had an opportunity to discuss with him

8  his right to have conflict-free counsel.  I discussed with him

9  overall what that concept meant in law, but what it came down

10 to is he's entitled to have a lawyer who has his undivided

11 interest at stake in the proceeding and none other, we talked

12 about various examples of how that can come about, and then we

13 discussed the specifics of this case, and, Your Honor, I'm

14 fully satisfied that Mr. Hanst understands his right to have

15 conflict-free counsel.  He understands what an actual conflict

16 is, a potential conflict is.  I don't see an actual conflict

17 in this case, but to the extent that there's a potential

18 conflict in this case, he understands that and he is prepared

19 to waive any potential conflicts, and he's prepared to answer

20 questions directly from the Court on this subject.

21        THE COURT:  I thank you, Mr. Rico.

22        Mr. Rico, Mr. Hanst is here from a foreign

23 jurisdiction.  Did you have any difficulty in understanding

24 him or him appearing to understand you?

25        MR. RICO:  No, Your Honor.  Even through the mask,

1  we did very well together.

2        THE COURT:  Yes, that certainly is a challenge.

3        MR. RICO:  And, Judge, he did strike me as a man of

4  intelligence and understanding of his principles.  Even though

5  he's from a foreign jurisdiction, he was able to grasp these

6  concepts, Your Honor.

7        THE COURT:  I thank you very much.

8        MR. RICO:  Yes, sir.

9        THE COURT:  So I am going to make inquiry of you,

10  Mr. Hanst.

11        You do recall having that conversation with Mr. Rico

12  privately?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  And did you also discuss these issues

15  with your own counsel privately?

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  Now, Mr. Rico has certainly provided a

18  rather detailed recitation of why he believes you understand

19  your rights and what he believes your decision to be, and it

20  is obvious from all of the television shows in America, the

21  person appearing in a criminal proceeding -- defendant in a

22  criminal proceeding -- has a right to counsel.  And what's a

23  concern here is not the mere fact that you have lawyers

24  sitting next to you, but the right to counsel actually goes

25  beyond just having a lawyer sitting with you and speaking up

1   for you, but it's to have a lawyer who doesn't have any

2   divided interest.

3           Do you understand what the divided interest or what

4   the Court's concern would be about your lawyer owing a

5   confidence to somebody other than you that might conflict with

6   the confidence that he owes to you; do you understand that

7   concept?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Could you tell me in your own words what

10  you think that means?

11          THE DEFENDANT:  I think that means that my -- that

12  this could -- could -- how do you say -- bring -- my lawyers

13  will not be a hundred percent for me, but they will also look

14  on the other side from where the payment is coming from, and

15  that may be the conflict, but I trust that this is not the

16  case in this case.

17          THE COURT:  You put your finger on it.  The

18  potential is that either knowingly, or unknowingly, either

19  wittingly or unwittingly, because someone else is paying the

20  bill, so to speak, and that person paying the bill, while not

21  named a defendant in this case, may have some issues or some

22  connections to a prosecution -- your prosecution or other

23  similar prosecution -- that could create an obligation on the

24  part of counsel to look out for the interest of the person

25  paying the bill even if those interests are not in harmony

1  with yours.

2         Do you understand that?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  And you have a constitutional right to

5  have a lawyer that doesn't have that problem -- that was the

6  point that Mr. Rico was making with you -- that you have a

7  right to have a lawyer that has no potential for divided

8  interest.

9         Do you understand that?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  And having considered the potential for

12 that conflict, and knowing that you have the right to have a

13 lawyer that doesn't even have a smidge of potential conflict

14 represent you, have you reached a determination in your own

15 mind as to whether or not you wish to go forward with counsel

16 that might have a potential conflict as opposed to having new

17 counsel where no conflict is presented?  Have you reached a

18 determination in your own mind?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  What is that determination?

21        THE DEFENDANT:  That I will continue with my lawyers

22 and waive my right of -- of -- look for another lawyer.

23        THE COURT:  Mr. Lax, is there any other inquiry that

24 the Government desires?

25        MR. LAX:  Your Honor, I know that the Court will

1    address this later, but I think sort of in context perhaps a

2    reminder that Mr. Hanst, you know, in a criminal case, of

3    course, here would be provided counsel at no cost whatsoever,

4    if necessary.

5              THE COURT:  Right.

6              To underscore that point, yes, and to the extent

7    that the -- to come complete the thought that to the extent

8    that you could not afford counsel, competent counsel would

9    indeed be provided to you without cost.

10             Do you understand that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Does that affect your decision one way

13   or the other?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  Anything else, Mr. Lax?

16             MR. LAX:  No, Your Honor.  Thank you.

17             THE COURT:  The Court is confident that based on

18   what I've heard directly, and most importantly, from

19   Mr. Hanst, and what I've heard from Mr. Rico and the depth of

20   his ability to reach in his -- the probing nature of his

21   inquiry, I just want to ask -- one footnote before I say

22   this -- I would give you additional time, Mr. Hanst, if you

23   needed to discuss this matter further either with Mr. Rico or

24   with Mr. Blais.

25             Do you need additional time to discuss this matter

1  with them, or are you satisfied that you've reached the

2  conclusion that you want to reach?

3          THE DEFENDANT:  I'm satisfied, Your Honor, because I

4  discussed the matter rather extensively with my lawyers here

5  and they explained me very, very clear that if at the end the

6  result is not what I like, that I cannot say that because they

7  did not do their work good, so I'm waiving that right, so I

8  know the risk.

9          THE COURT:  So you are content that you can get

10  counsel that is competent and will represent you vigorously,

11  and to the extent that there is a potential for a conflict or

12  divided interest, you are waiving that conflict or divided

13  interest?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And the Court, obviously implicit in

16  what the Court had been indicating, that the Court is in

17  agreement with Mr. Rico that there is no actual unwaivable

18  conflict presented; that to the extent there is anything

19  presented at all, it is a remote potential conflict, and I am

20  satisfied with the responses that I've received from Mr. Hanst

21  that he understands the potential conflict; he understands the

22  concerns about that conflict, what it could mean for the

23  nature of the representation he receives; he's had the

24  opportunity to review those concerns, not only with his own

25  current attorneys, but also the independent Curcio counsel

1    appointed by the Court.  The Court is satisfied that Curcio

2    counsel has performed his function above and beyond the call

3    of duty, and I am satisfied that the waiver is valid and the

4    Court accepts it and will allow Mr. Blais and his colleagues

5    to continue to represent the defendant in this action.

6              We also thank, again, Mr. Rico for his services, and

7    he is free to leave the courtroom, and, again, he goes with

8    appreciation.

9              MR. RICO:  Thank you very much, Your Honor.

10             THE COURT:  You're welcome.

11             All right.  That brings us back to status, and that

12   brings us back to you, Mr. Lax.

13             MR. LAX:  Yes, Your Honor.

14             So we have prepared an information.  We understand

15   that the defendant is willing to waive indictment and consent

16   to the filing of that information and to enter a plea of

17   guilty.

18             Of course, in connection with that, we would also

19   have the issue of bail.  I don't know the order in which those

20   are dealt with.

21             THE COURT:  That awaits to the end.

22             MR. LAX:  Then I think we are ready to proceed with

23   the waiver of indictment.

24             THE COURT:  If we don't end up with a plea, you all

25   will tell me where we're going next.

1    MR. LAX:  We'll cross that bridge if we have to, but

2  I doubt we will meet that bridge.

3    THE COURT:  We will have to cross that bridge, and

4  Pretrial Officer Long is actually in the arraignment court

5  now, in any event, so we'll have to wait for him as well.

6    All right.  So, Mr. Blais, as I understand it from

7  Mr. Lax's report and from what I understood coming in from the

8  deputy clerk, we are anticipating a plea from Mr. Hanst.

9    MR. BLAIS:  That's correct, Your Honor.  Mr. Lax's

10  recitation of the procedural status is correct.

11    THE COURT:  Then let us begin with Mr. Villanueva

12  swearing the defendant.

13    THE COURTROOM DEPUTY:  Raise your right hand.

14    (Defendant sworn.)

15    THE DEFENDANT:  I -- I swear.  Sorry.

16    THE COURTROOM DEPUTY:  Thank you very much.

17    THE COURT:  All right.

18    Now, Mr. Hanst, as I indicated earlier in the

19  hearing, you are obviously here from a foreign country, and as

20  I understand it -- and correct me if I'm wrong -- that your

21  first language is not English; is that correct?

22    THE DEFENDANT:  That's correct.

23    THE COURT:  Now, do you feel confident in your

24  English abilities?  Are you in need for us to provide an

25  interpreter in any language before we proceed further?

1      THE DEFENDANT:  No.  I feel confident that I can

2  communicate.

3      THE COURT:  All right.  That being the case, then,

4  we will proceed without an interpreter, and let me tell you

5  what we're going to do.

6          This is a hearing to allocute a guilty plea, and

7  counsel -- your counsel -- and the Government counsel as well

8  has advised the Court that a guilty plea is anticipated, but

9  there's a number of questions that I must ask you to assure me

10  that the plea would be valid, which is sometimes how a -- the

11  hearing is designed to allocute a guilty plea doesn't end up

12  allocuting a guilty plea because there may be a problem that

13  develops along the process, so it's important for me to hear

14  from you that we get the information that shows me that your

15  decision to plead guilty to the offense is indeed a valid one.

16          So what are these questions?  Well, some of them are

17  obvious, too, but the first obvious question is, do you

18  understand the charge or charges against you?

19      THE DEFENDANT:  Yes, Your Honor.

20      THE COURT:  Well, we're going to find out.  I'm

21  going to give you an indication of the kinds of questions that

22  we're going to ask to make sure.  I know that your instant

23  answer would be yes to all of these questions, but this is

24  just to let you know the kind of inquiry we're going to get,

25  and it's going to allow me to evaluate your answers based on

1  what you say in response to each of my questions to see if you

2  understand the charge; that you understand the consequences of

3  pleading guilty to the charge or charges; that you understand

4  your rights; that you understand the rights that you waive by

5  pleading guilty; that your decision to plead guilty is not

6  only knowing that you know your rights, but also agreed to

7  waive them voluntarily; and, lastly, you will have to tell me

8  facts under oath that show that you indeed are guilty of the

9  charge or charges to which you plead guilty.

10          So the questions are important, and to the extent

11  that -- particularly wearing masks and all -- to the extent

12  that you don't hear them or don't understand them, please let

13  me know and we will repeat or rephrase them for you.

14          Do you understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Now, we've already touched upon this in

17  connection with what's called a Curcio hearing that we had

18  about the divided counsel, and one of the things that we

19  discussed in the course of that hearing was the fact that you

20  have a right -- at this stage of the proceeding, or any other

21  stage of a criminal proceeding -- a defendant has the right to

22  be represented by competent counsel.  If the defendant could

23  not afford counsel, then competent counsel would be provided.

24  But on the call of the calendar of this matter, Mr. Blais, who

25  is sitting with you, and his colleagues, indicated to me that

1    they are your lawyers for this case.

2              Is Mr. Blais your lawyer for this case?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  That means that if at any point you need

5    to speak privately with your lawyers, you just let me know,

6    and I will permit you to do so without any penalty.

7              Do you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Now, we did administer the oath;

10   correct?

11             THE COURTROOM DEPUTY:  Yes, we did.

12             THE COURT:  And so therefore, having administered

13   the oath, that means if you answer any of the questions put to

14   you at this hearing falsely, Mr. Hanst, regardless of who may

15   have asked the question, then those false answers can be used

16   against you in a separate prosecution for the crimes of

17   perjury or making a false statement.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Now, with all those understandings,

21   we're going to back up all the way to the beginning, and I'm

22   going to ask you to place on the record your full name.

23             THE DEFENDANT:  Lionel Alajeno Hanst.

24             THE COURT:  Mr. Hanst, how old are you?

25             THE DEFENDANT:  I'm 60 years old.

1    THE COURT:  And what is the highest grade you

2  completed in school?

3    THE DEFENDANT:  Our high school in Curaçao, and then

4  accounting specialty through Maylor (ph) -- at that time

5  Maylor College in Holland, but I always live on the island.

6    THE COURT:  And is that what you would consider a

7  college degree, or is that just a --

8    THE DEFENDANT:  It's somewhat above a college

9  degree.

10    THE COURT:  Okay.  Now, Mr. Hanst, are you currently

11  or have you recently been treated by a physician?

12    THE DEFENDANT:  At the moment, I have a problem with

13  prostate and kidney stones.

14    THE COURT:  The last one can be painful, but I hope

15  not too painful.

16    Are you currently or have you recently been treated

17  by a psychiatrist?

18    THE DEFENDANT:  No.

19    THE COURT:  In the last 24 hours, have you taken any

20  narcotic drugs?

21    THE DEFENDANT:  No, Your Honor.

22    THE COURT:  In the last 24 hours, have you taken

23  medications of any kind?

24    THE DEFENDANT:  No, Your Honor.

25    THE COURT:  In the last 24 hours, have you consumed

1  any alcoholic beverages?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  Have you ever been hospitalized or

4  treated for any mental illness?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Have you ever been hospitalized or

7  treated for any addiction to drugs or alcohol?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  As you appear before me in court this

10  afternoon, is your mind clear?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And you understand what's going on

13  around you in the court?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Now, Mr. Blais, you had a full and fair

16  opportunity to discuss this case with Mr. Hanst?

17          MR. BLAIS:  Yes, I have, Your Honor.

18          THE COURT:  And on the basis of your conversations

19  and dealings with him, do you believe that he understands the

20  nature of the proceedings that we are conducting this

21  afternoon?

22          MR. BLAIS:  I do, Your Honor.

23          THE COURT:  Do you believe he understands the nature

24  of the rights that he would be waiving by pleading guilty?

25          MR. BLAIS:  I do, Your Honor.

1          THE COURT:  In your opinion, is he competent to

2     enter a plea of any kind at this time?

3          MR. BLAIS:  He is, Your Honor.

4          THE COURT:  And have you had an opportunity to

5     discuss with him the maximum sentence and fine that can be

6     imposed in this case?

7          MR. BLAIS:  We have discussed that, Your Honor.

8          THE COURT:  Have you also discussed with him the

9     operation of the sentencing guidelines in the context of

10    recent court decisions?

11         MR. BLAIS:  We have.

12         THE COURT:  Mr. Hanst, you've heard Mr. Blais tell

13    me that he believes he's had a full and fair opportunity to

14    discuss your case with you.

15         Do you believe you've had a full and fair

16    opportunity to discuss your case with him?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  And are you satisfied with the

19    representation and advice you have received?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Let me turn to Mr. Lax now.

22         Mr. Lax, would you sketch out for us on the record

23    the nature of the charge or charges to which it is anticipated

24    that Mr. Hanst will offer a plea?

25         MR. LAX:  Yes, Your Honor.

1      The Government intends to file an information that

2  charges conspiracy to commit money laundering in violation of

3  Title 18, United States Code, Sections 1956(h) and 3551 et

4  sequentia.  I'm happy to read the allegation into the record,

5  if that's what the Court would like.

6           THE COURT:  If you sketch out time and place so that

7  it will trigger a signal to Mr. Hanst as to exactly what the

8  charge is for that with all of the --

9           MR. LAX:  Yes.  Yes, Your Honor.

10          The proposed charge charges that Mr. Hanst, in or

11  about and between November 2014 and September of 2020, within

12  the Eastern District of New York and elsewhere, he, with

13  others, knowingly and intentionally conspired to commit money

14  laundering in violation of Section 1956(h); that is, to

15  transport, transmit, or transfer monetary instruments or funds

16  from places in the United States to places outside, or vice

17  versa, knowing that those instruments and funds involved in

18  those transfers represented the proceeds of some form of

19  unlawful activity; and that those transfers were designed in

20  whole or in part to conceal and disguise the nature of the

21  location and source of specified unlawful activity including,

22  in particular, felony violations of the Foreign Corrupt

23  Practices Act in violation of Title 15 United States Code,

24  Sections 78dd-2 and 78dd-3.

25          THE COURT:  All right.  And that was in, sum and

1   substance, the information?

2           MR. LAX:  Yes, in sum and substance, Your Honor.

3           THE COURT:  Now, Mr. Hanst, are those the charges or

4   among the charges you've had an opportunity to consult with

5   Mr. Blais about?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  And do you understand those charges?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Now, did you see those charges presented

10  to you in a writing?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And that writing was called an

13  information, was it?

14          THE DEFENDANT:  Information letter, yes, Your Honor.

15          THE COURT:  Let me tell you why that's an important

16  word.  And, again, I'm sure you've done this with Mr. Blais,

17  but it's, again, one of those rights that's important that I

18  know you understand, and, particularly, if you waive it, that

19  you've waived it knowingly and intelligently, and it's simply

20  this:  That when a person in the United States is charged with

21  a felony crime, that the normal way to commence that

22  prosecution is by way of a grand jury indictment, and that the

23  grand jury invokes an indictment, and that commences the

24  transaction, and it is a constitutional right to have that

25  process.  It is also a right that can be waived.

1          Do you understand that?

2          THE DEFENDANT:  I understand.

3          THE COURT:  Now, it's my understanding that at the

4    end of my inquiry to you that you are going to waive that

5    right; is that correct?

6          THE DEFENDANT:  That's correct, Your Honor.

7          THE COURT:  So it's important before you make that

8    final decision that we go over exactly what this right's all

9    about.  And what is a grand jury?  A grand jury is a group of

10   at least 16 but not more than 23 people that are chosen in the

11   district court, and they sit as a grand jury, and the

12   prosecutors, they believe a crime was committed.  They proceed

13   before the grand jury and present the grand jury evidence that

14   a crime has been committed and that a certain individual or

15   individuals have committed the crime.  And if at least 12

16   members of that grand jury believe that a crime has been

17   committed and that a particular individual committed the

18   crime, they can vote a true bill or indict that particular

19   defendant for that offense.

20          Now, as I say, it is a process that you can waive.

21   You tell me that it's a process you intend to waive, but let's

22   have a hypothetical, and that is, sitting there, you've now

23   changed your mind and that you don't want to waive grand jury

24   indictment.  What would happen?  Well, we don't really know

25   for sure what would happen, but we know this.  The Government

1   at first would have the right to present that evidence to the

2   grand jury -- and they may or they may not -- but if the

3   Government decided to present the evidence to the grand jury,

4   then the grand jury would decide whether or not to indict

5   you -- and the grand jury may or may not -- but this we know

6   for sure is that if you do waive grand jury indictment and

7   accept prosecution by way of information, which is really just

8   the signature of the United States Attorney on a paper, the

9   prosecution will proceed against you just as if the grand jury

10  had indicted you.

11          Do you understand that?

12          THE DEFENDANT:  I do understand, yes.

13          THE COURT:  And have you discussed that right with

14  Mr. Blais?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And, Mr. Blais, do you know of any

17  reason why Mr. Hanst should not waive that right?

18          MR. BLAIS:  No, Your Honor.

19          THE COURT:  And I ask you, then, Mr. Hanst, what is

20  your decision?  Do you wish to waive that right, or do you

21  wish to insist on a grand jury proceeding?

22          THE DEFENDANT:  I wish to waive that right, Your

23  Honor.

24          THE COURT:  All right.

25          Now, Mr. Villanueva, has presented it to me.  It is

1  signed.

2      Mr. Hanst, this is a waiver of indictment.  Is that

3  your signature on the bottom of that page?

4      THE DEFENDANT:  Yes, it is, Your Honor.

5      THE COURT:  Mr. Blais, did you sign that as well?

6      MR. BLAIS:  I think one of my colleagues actually

7  signed it.

8      THE COURT:  One of your colleagues?

9      MR. BLAIS:  Yes.

10     THE COURT:  You actually signed it before I admitted

11 you.

12     MR. BLAIS:  Yes, that's correct.

13     MR. ROHLFSEN:  Your Honor, this is Ryan Rohlfsen.  I

14 signed it.  Thank you.

15     THE COURT:  I think I admitted you pro hac.

16     MR. ROHLFSEN:  Exactly.

17     THE COURT:  I think we get paid more for Mr. Blais,

18 though.

19     And I believe that this grand jury waiver is valid,

20 and I have indeed signed it.

21     Now, we are now going to go over more rights, and

22 the first thing that you should know is that the mere fact

23 that you've agreed to waive grand jury indictment doesn't mean

24 you have to plead guilty.

25     Do you understand that?

1    THE DEFENDANT:  I do understand, yes, Your Honor.

2    THE COURT:  All right.  And this really is hinged to

3 all of the rights, and that's simply this -- and I'm sure

4 you've discussed this again with counsel, but, again, this is

5 a set of questions that relate to rights that are so important

6 that we do it again in open court.

7    The first thing that I want to impress upon you is

8 that the mere fact that you are guilty, the mere fact that you

9 even waived indictment, doesn't mean you have to plead guilty.

10 It still remains the obligation, the burden of the Government,

11 to establish your guilt beyond a reasonable doubt, and if the

12 Government, the prosecutor, cannot or does not meet this

13 burden of proof, then the jury has a duty, the obligation, to

14 find you not guilty even if you are guilty.

15    So what that means now is that even if you are

16 guilty, you still have a choice.  It is up to you -- not your

17 lawyer or anybody else -- to make that decision.

18    Now, you apparently wish to plead guilty, but you

19 could plead not guilty, and if you did plead not guilty, you

20 would be entitled to a speedy and public trial on the charges

21 set forth in that information, presumably right here in this

22 courtroom before a jury, and with the assistance of counsel.

23    Do you understand that?

24    THE DEFENDANT:  Yes, I do.

25    THE COURT:  You understand that at that trial, you

1    would be presumed innocent; you would not have to prove that

2    you were innocent.  It remains the Government's burden to

3    establish your guilt beyond a reasonable doubt.

4            Do you understand that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  But by pleading guilty, you are

7    relieving the Government of its burden of establishing your

8    guilt beyond a reasonable doubt.

9            Do you understand that?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Now, at the trial, the witnesses for the

12   Government would have to come into open court, testify in your

13   presence.  Your lawyers could cross-examine those witnesses

14   for the Government, they could object to evidence offered by

15   the Government, they could raise defenses on your behalf, they

16   could call witnesses to testify on your behalf and compel them

17   to testify even if they didn't want to testify.

18           Do you understand that?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  But by pleading guilty, you give up your

21   right to confront the witnesses who testify against you, you

22   give up your right to raise defenses, you give up your right

23   to call witnesses and to offer proof on your own defense.

24           Do you understand that?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  One of those witnesses could be

2    yourself.  You would have the right at your trial to take the

3    witness stand and offer proof to establish your innocence.

4          Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  To establish that you are not guilty.

7          Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  But you could not be compelled to take

10   the witness stand.  A defendant in a criminal case in the

11   United States cannot be compelled -- forced -- to take the

12   witness stand and to say anything that could be used against

13   him to show that he is guilty of the crime or crimes to which

14   he has been charged.  This is called your right against

15   self-incrimination; and if you were to invoke that during the

16   trial, I would instruct the jury that they could not hold your

17   silence against you.

18          Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  But by pleading guilty, you are

21   admitting your guilt and you give up your right against

22   self-incrimination with respect to this case.

23          Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And, actually, as I previewed for you a

1    little earlier, it goes beyond that.  Not only do you give up

2    your right against self-incrimination, you will be asked to

3    incriminate yourself by stating on the record facts under oath

4    that shows that you are guilty of the crime to which you are

5    pleading guilty.

6            Do you understand that?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Now, if you do offer your plea and I

9    accept it, you will be waiving all of the rights that I have

10   just discussed with you.  There will be no trial of any kind.

11   I will simply enter a judgment of conviction on the basis of

12   your guilty plea.

13           Do you understand that?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  All right.

16           Now, Mr. Lax, is there an appellate waiver in this

17   plea agreement?

18           MR. LAX:  Yes, Your Honor, there is an appellate

19   waiver that's operable if the Court sentences Mr. Hanst to at

20   or below 121 months.

21           THE COURT:  All right.  Now, what is this business

22   of an appellate waiver?  Well, it's simply this, Mr. Hanst:

23   If you would go to trial and the jury found you guilty, you

24   could appeal the conviction and any sentence that I impose,

25   but by entering into a plea agreement that contains an

1　appellate waiver, you will be giving up your right to file an

2　appeal or to attack all or part of the sentence that I impose

3　either directly or in a collateral proceeding.

4　　　　Do you understand that?

5　　　　THE DEFENDANT:  Yes, Your Honor.

6　　　　THE COURT:  Now, with all of that understanding, is

7　it still your intent to plead guilty?

8　　　　THE DEFENDANT:  Yes, Your Honor.

9　　　　THE COURT:  Now, we've eluded, and now we'll

10　establish, that, in fact, this plea agreement is in writing.

11　The deputy clerk has handed me a plea agreement which he has

12　marked as Court Exhibit 1, and on the last page, there are

13　signatures affixed.

14　　　　Mr. Hanst, is that your signature on the last page

15　of Court Exhibit 1?

16　　　　THE DEFENDANT:  Yes, Your Honor.

17　　　　THE COURT:  And which counsel signed this one.

18　　　　MR. ROHLFSEN:  I did, Your Honor, Mr. Rohlfsen.

19　　　　THE COURT:  And on the Government's side?

20　　　　MR. LAX:  Yes, Your Honor, there are signatures from

21　the offices of the United States Attorney, the fraud section

22　of the Criminal Division and the money laundering asset

23　recovery section of the Criminal Division and also

24　representatives of those offices.  All three offices are here

25　today.

1          THE COURT:  And all signed.

2          MR. LAX:  All signed, Your Honor.

3          THE COURT:  Now, Mr. Hanst, before you signed this

4   plea agreement, did you discuss it with Mr. Blais?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And did you read it yourself?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Did you have any difficulty in reading

9   the English?

10         THE DEFENDANT:  Some things were a little bit

11  technical or I didn't understand it, they were explained to

12  me.

13         THE COURT:  So after that, were you satisfied that

14  you understood those words after the explanation?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  And at the time of -- first

17  of all, if you understood it then, do you still understand it?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Do you have any questions about it now?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  At the time you put your signature on

22  the document, did you do so voluntarily?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And is this the only deal or arrangement

25  that you had with the Government about this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, Mr. Blais, those conversations that Mr. Hanst had, were they with you?

MR. BLAIS:  With me and my colleagues, Your Honor.

THE COURT:  Were you the lead lawyer at that time? Who actually communicated directly with Mr. Hanst?

MR. BLAIS:  I think Mr. Rohlfsen did the bulk of the communication.

THE COURT:  Mr. Rohlfsen, when you discussed the plea agreement with Mr. Hanst, did you come to the conclusion that he understood it?

MR. ROHLFSEN:  Yes.  Yes, Your Honor.

THE COURT:  And did you conclude that when he signed it, he signed it voluntarily?

MR. ROHLFSEN:  He did, Your Honor.

THE COURT:  And does anyone on the defense team know of any information to believe that there is some agreement other than this agreement relating to the outcome of this case?

MR. ROHLFSEN:  There is not, Your Honor.

THE COURT:  Now, Mr. Lax, you will now become the

1  monitor of my eyes to make sure we touch all the bases here.

2  　　　　　MR. LAX:  Yes, Judge.

3  　　　　　And the first area of inquiry we are going to go

4  over, Mr. Hanst, these are the possible consequences of the

5  plea.  The first area that we're going to focus on is the

6  possibility of custody -- jail time.

7  　　　　　And what are the parameters there, Mr. Lax?

8  　　　　　MR. LAX:  Your Honor, the maximum term of

9  imprisonment is 20 years.

10 　　　　　THE COURT:  And the minimum is zero?

11 　　　　　MR. LAX:  Correct.

12 　　　　　THE COURT:  So, Mr. Hanst, that means that under

13 that section of law, you can be sentenced to a term of

14 imprisonment that could be zero -- nothing -- or it could be

15 as long as 20 years.

16 　　　　　Do you understand that?

17 　　　　　THE DEFENDANT:  I do, Your Honor.

18 　　　　　THE COURT:  Now, the next area is called supervised

19 release.  It's also a consequence; it's an infringement on

20 your liberty, so it's important to understand it.  And

21 supervised release refers to that period of time following any

22 period of imprisonment the defendant, who has been imprisoned

23 as part of the sentence, will be released from jail on certain

24 terms or conditions of release; and if during a period of

25 supervised release that defendant were to violate one of those

1  terms or conditions, well, then, that defendant could be sent

2  back to jail for additional jail time.

3          Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Now, is this a zero to three, Mr. Lax?

6          MR. LAX:  Yes, Your Honor.

7          THE COURT:  So this is one of the most standard

8  terms of supervised release, and by that I mean this:  The

9  sections of law do not set a minimum term.  So, again, the

10 period of supervised release could be zero, but it also could

11 be as long as three years, and whatever term the Court were to

12 set, somewhere between zero and three, if during that period

13 that was set after you have been released from custody, if you

14 were to violate the term or condition of release, you could be

15 sent back to prison for up to two years of additional jail

16 time without credit for any time previously served in prison

17 or time previously served on post-release supervision.

18          Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Now, I assume, Mr. Lax, the fine section

21 is one of those two-track --

22         MR. LAX:  Yes, Your Honor.

23         THE COURT:  One track is the $250,000 track.

24         MR. LAX:  It's 500,000 for money laundering or twice

25 the value of the monetary instruments or funds involved in the

1  transactions.

2          THE COURT:  What track do we think we're on?

3          MR. LAX:  The latter, Your Honor.  I think --

4  there's actually an allegation in the information that puts a

5  number on it, which is 21 million, so two times that, I think,

6  makes the maximum fine 42 million.

7          THE COURT:  Okay.  So you understand that the

8  Government is anticipating that the maximum fine that you

9  could face is $42 million, thereabouts.

10          Do you understand that?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  So we are going to stay in

13  the financial penalty section.  Is there any allegations with

14  respect to forfeiture, Mr. Lax?

15          MR. LAX:  Yes, Your Honor.  There's a criminal

16  forfeiture in the amount of $1,050,000, and that's set forth

17  in paragraph 6 through 12 of the agreement.

18          THE COURT:  And that's 1 million -- did you say

19  1,050,000?

20          MR. LAX:  Yes, 1,050,000.

21          THE COURT:  And that's an agreed-to number?

22          MR. LAX:  Yes, Your Honor, that's in the agreement.

23          THE COURT:  All right.  So I understand it this way,

24  and Mr. Hanst, you tell me if you understand it that way, too,

25  that as part of your agreement, you have agreed to a criminal

1 forfeiture payment of $1,050,000, and that's an agreed number

2 between you and the Government.

3        Is that your understanding?

4        THE DEFENDANT:  Yes, that's my understanding.

5        THE COURT:  So that is a consequence of your plea.

6        Is there a restitution element here, too, Mr. Lax?

7        MR. LAX:  Not specifically set forth, Your Honor, so

8 it would be potentially mandatory in the full amount of any

9 victim's losses as determined by the Court at sentencing.

10        THE COURT:  So if victims come forward at or before

11 the time of sentencing, Mr. Hanst, and can establish that your

12 crime injured them; that they would be entitled to restitution

13 of that loss.

14        Do you understand that?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  And the special statutory assessment is

17 the $100 assessment?

18        MR. LAX:  Yes, Judge.

19        THE COURT:  In addition to those financial

20 penalties, the Court is obliged to impose a special statutory

21 assessment of not less than $100.

22        Do you understand that?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Now, I'm guessing the answer, but I will

25 ask you expressly, Mr. Hanst, are you a citizen of the United

1 States?

2 　　　　THE DEFENDANT:  No, Your Honor.

3 　　　　THE COURT:  So you understand that the fact that you

4 are pleading guilty to this charge can and most likely will

5 lead to your deportation, exclusion, or removal from the

6 United States; you understand that?

7 　　　　THE DEFENDANT:  I do.

8 　　　　THE COURT:  Mr. Lax, have I missed any other direct

9 potential consequences?

10 　　　　MR. LAX:  No, Your Honor.

11 　　　　THE COURT:  Again, potential.

12 　　　　Now we're going to go back to an actual consequence,

13 because it's actually part of the agreement or the contract,

14 and that is the appellate waiver that we discussed earlier,

15 and it's simply this:  If I were to impose on you a sentence

16 of 121 months or below, that you will have then given up your

17 right to file an appeal of the conviction or of the sentence

18 itself, either directly or by the collateral proceeding.

19 　　　　Do you understand that?

20 　　　　THE DEFENDANT:  I do, Your Honor.

21 　　　　THE COURT:  What I move to next is the actual

22 sentencing process, because as we went over the potential

23 consequences, at times there was a range of numbers.  The

24 important thing to understand is that merely because there is

25 a range doesn't mean that the Court is free to pick out a

1  number somewhere in the middle.  There's a process for

2  determining where in the range a sentence will fall.  That

3  process begins with the guidelines that have been promulgated

4  by the United States Sentencing Commission which pinpoints a

5  specific sentence for any given crime and then points the

6  Court to factors that could lead the Court to depart from that

7  pinpoint either to go higher or to go lower based on those

8  factors.

9        Now, the guidelines are no longer mandatory, but

10  they remain advisory, and the Court is required to look at

11  them and take advice from them.

12        Do you understand that?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  Now, that's not the only place we get

15  advice.  There's another process that begins after this kind

16  of hearing, and it's the work of the Probation Department.

17  The Probation Department will undertake a separate

18  investigation into the facts and circumstance of your case and

19  into the facts and circumstances of your life and provide the

20  Court and counsel with an investigation report we call the

21  Presentence Investigation Report, telling us about your life,

22  whether you committed other criminal acts or what your

23  education is, family, health, things of that nature; and it

24  will also include a calculation that Probation makes as to

25  what the official guidelines are, what the offense level is,

1    and what the Criminal History Category is, and put that in the
2    report as well.  The report will be sent to you and Mr. Blaise
3    and his colleagues, Mr. Lax and his colleagues, it will be
4    sent to me, and no one can predict with precision what the
5    Probation Department will recommend; and no one, including me,
6    can predict with precision what I will do with the
7    recommendation at the time of sentence, but we can predict
8    that it will be in the report.  And after we've all
9    individually had a chance to digest that report, we will come
10   to court for another hearing very similar to this one, and the
11   first thing the Court will do after listening to the lawyers,
12   I will then set what the official guidelines are, and then
13   proceed to the sentencing process itself, which is controlled
14   by yet another section of the law, and that section is Title
15   18, United States Code Section 3553, and this sets forth the
16   standards and goals for sentencing.  In most countries,
17   whether you are a citizen of the United States or a citizen of
18   another democratic society, you presumably would not be too
19   surprised to find that basically the Court is instructed to
20   fashion a punishment that fits the crime so that the more
21   serious the crime, the more substantial the punishment should
22   be.  And "punishment" is a word that's in the statute, that
23   there should be pain or punishment inflicted.
24           Now, of course, in the United States, it doesn't
25   take the form of torture, but it does take the form of

1    custodial incarceration and financial penalties, so some

2    combination of jail and financial penalties is normally what

3    our punishment looks like in the United States.  The section

4    tells the Court to promote respect for the law.  Congress

5    passes laws, attaches penalties.  If the Courts never impose

6    any of the penalties, there's not going to be too much respect

7    for the law.  So there's a concern that there's a harmony

8    between what the Courts do in sentencing and what the Congress

9    has signaled when it passed the law in the first place.

10           There's also a very heavy emphasis on deterrence.  I

11   often call it the "hot stove point."  You know, you touch the

12   hot stove, and if it's really hot, you remember not to do it

13   again because you don't want to get burned again, and that's

14   the same with sentencing; that the sentencing should impose a

15   sufficient punishment that it will act to deter the offender

16   from doing it again.

17           There's also the concept of general deterrence which

18   uses the offender as an example, don't do what the offender

19   did, otherwise the punishment he got will be the punishment

20   that you get.  And sometimes there is a need, depending on the

21   circumstances, what I call "incapacitate the defendant," to

22   remove the defendant from society just to protect society.

23           On the other side of the coin, there's also concern

24   for rehabilitation because for the vast, vast majority of

25   people who are sentenced to jail, they come out.  They come

1    out of jail, and to the extent that they need help and the

2    form of rehabilitation to get them in a position to make

3    something lawful out of their lives, that they will have the

4    tools to get that job done, so that's also a goal, an

5    objective of 3553.

6           And then also you look at the individual

7    circumstances of a defendant as well, and they can factor into

8    the mix in determining what the sentence should be, and after

9    the Court balances all of these, or tries to balance all of

10   these factors, then there's the section of law that says that

11   the sentence that's imposed should be no harsher than

12   necessary to accomplish all of the other objectives.

13          Do you understand the process of sentencing?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Now, as I indicated to you that no one

16   can predict with precision what Probation will recommend as

17   the guidelines exposure doesn't mean that counsel can't --

18   many times they can -- look at the facts, as they believe them

19   to be, and make a prognostication -- or educated guess -- as

20   to what the guidelines might show.

21          And in this case, Mr. Lax, has the Government made

22   such a prognostication?

23          MR. LAX:  Yes, Your Honor.  As of now, the

24   Government, after crediting Mr. Hanst for three points off for

25   acceptance, believes he would be a level 29.  And assuming he

1  is in Criminal History Category I, that would carry a range of

2  imprisonment of 87 to 108 months.

3         THE COURT:  Mr. Blais, have you made any

4  prognostications of your own?

5         MR. BLAIS:  Our prognostications are the same as the

6  Government.

7         THE COURT:  All right.  So we understand each other,

8  Mr. Hanst, I've asked counsel to provide you with their

9  prognostication.  The important thing to understand is that if

10  their prognostications were proven wrong, the mere fact that

11  they are proven wrong doesn't give you a ground later to

12  withdraw the plea that you enter now.

13         Do you understand that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  So that's an appropriate time for a

16  pause and the pause is simply for this:  If you have any

17  questions about anything that I've done during this hearing,

18  the reporter will take them down, I will try to answer them in

19  open court.  To the extent that you need to speak privately

20  with Mr. Blais and his counsel, I will give you time for that,

21  but if you didn't need time for either of those things, I

22  would simply move to take your plea.

23         Do you need additional time, or are you ready now to

24  offer your plea?

25         THE DEFENDANT:  No, I don't need additional time.

1          THE COURT:  And you're ready now?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Let me begin with Mr. Blais first.

4          Mr. Blais, do you know of any reason why Mr. Hanst

5     should not plead guilty at this time?

6          MR. BLAIS:  No, Your Honor.

7          THE COURT:  And are you aware of any viable legal

8     defense?

9          MR. BLAIS:  No, Your Honor.

10          THE COURT:  I ask you, Mr. Hanst, with respect to

11    the one count of the information, what is your plea; guilty or

12    not guilty?

13          THE DEFENDANT:  I plead guilty.

14          THE COURT:  And, Mr. Hanst, are you pleading guilty

15    voluntarily and of your own free will?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Has anyone forced you or threatened you

18    to plead guilty?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  Other than the promises that are set

21    forth in the plea agreement that has been marked as Court

22    Exhibit 1, has anyone made any promises to you to get you to

23    plead guilty?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Has anyone made any promise to you as to

1  what your final sentence will be?

2         THE DEFENDANT:  No, Your Honor.

3         THE COURT:  Now, earlier in the very top, actually,

4  of the hearing, I had mentioned to you that there would come a

5  point in which you would have to tell me under oath facts that

6  show that you indeed are guilty of this charge.  We have now

7  reached that point.

8         And, Mr. Blais, I don't know how you all wish to

9  proceed.  Is Mr. Hanst giving us a narrative, or are you

10 proceeding by question and answer?  Whichever, we are ready

11 for his allocution.

12        MR. BLAIS:  Your Honor, Mr. Hanst has a prepared

13 statement that I think he would like to read into the record.

14        THE COURT:  All right.  We certainly will hear your

15 statement, Mr. Hanst.

16        THE DEFENDANT:  From at least April 2015 to

17 September 2020, I agreed with others, including a trader at

18 Vitol, to send wires at the instruction of others from and

19 through a place outside the United States to and through a

20 place in the United States.  I understood that the source of

21 the funds I was wiring was an illegal activity and that the

22 purpose of the wires was to conceal the nature and source of

23 the proceeds.  At the time I was wiring the funds, I knew what

24 I was doing was wrong.

25        THE COURT:  You knew it was a crime.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Mr. Lax, anything we're missing in that

3    allocution?

4          MR. LAX:  Your Honor, the Government would proffer

5    the information as to the specified unlawful activity, which

6    is as to the FCPA violation.  Specifically, the Government,

7    through multiple witnesses -- you know, certainly documentary

8    evidence -- would prove that the transfers were the proceeds

9    of an international bribery scheme involving payments, and

10   promises of payments to Ecuadorian, Mexican, and Venezuelan

11   Government officials by and on behalf of Vitol and the Vitol

12   trader in exchange for securing improper advantages for Vitol

13   in obtaining and retaining business with and related to

14   various state-owned entities, including Petro Ecuador, which

15   is a state-owned oil company of Ecuador; PEMEX and PEMEX

16   Procurement International, which is state-owned oil entities

17   for Mexico; and Citgo Petroleum, which is a state-owned

18   subsidiary of Venezuela; and, of course, interstate means and

19   methods were used in furtherance of the FCPA violation.

20         So we would proffer that as the specified unlawful

21   activity and also ask that the defense stipulate to that.

22         THE COURT:  Mr. Blais?

23         MR. BLAIS:  Yes, we're prepared to stipulate to

24   that, Your Honor.

25         THE COURT:  Satisfied, Mr. Lax?

1           MR. LAX:  Yes, Your Honor.

2           THE COURT:  As is the Court.  The Court is satisfied

3    as well.

4           Mr. Hanst, I find that you understand the charge

5    against you; that you understand the consequences of pleading

6    guilty to it; you understand your rights; you understand the

7    rights that you waive by pleading guilty; that your decision

8    to plead guilty was not only knowing, but also voluntary; and

9    you have, in fact, through your allegation, provided the Court

10   with a statement under oath that shows that you indeed are

11   guilty of the charge to which you have pled guilty, and the

12   Court therefore accepts your plea of guilty to the one count

13   of the information.

14          Now, the Court does not set a sentencing date at

15   this time, but when probation has completed its investigation

16   and made its report and all have had a chance to digest it, we

17   will reassemble for the sentencing hearing.

18          And when Probation begins its outreach to Mr. Hanst,

19   Mr. Blais, I assume you wish to be notified and to be present?

20          MR. BLAIS:  Yes, Your Honor.

21          THE COURT:  And the record will reflect that.

22          Now, Mr. Lax, is there any timing issue here?  Is

23   Probation to begin its work immediately, or is it to --

24          MR. LAX:  We would ask the Court hold that work in

25   abeyance, Your Honor.

1        THE COURT:  And you're in accord, Mr. Blais?

2        MR. BLAIS:  Yes, Your Honor.

3        THE COURT:  And we will hold it in abeyance and

4 await further signal from counsel.

5        MR. LAX:  If I may, Your Honor, as well, as to the

6 allocution, I just wanted to note for the Court that in the

7 agreement there's a waiver of venue that's written in the

8 agreement itself.  There was no specific allocution as to

9 venue.  The Government could proffer that, but I think, given

10 a written waiver, I think that would suffice, but I did want

11 to note that for the Court.

12        THE COURT:  And, Mr. Blais, you second the motion.

13        MR. BLAIS:  We don't disagree that there is, in

14 fact, a venue waiver in the agreement.

15        THE COURT:  And the Court accepts the waiver.

16        All right.  Now, back to you, Mr. Lax.  Next dance

17 on the dance card.

18        MR. LAX:  Well, I think that the last two remaining

19 tunes are the waiver of extradition and the Court's

20 determination on bail.  I think it probably makes sense to do

21 them in that order.

22        THE COURT:  All right.

23        Now -- refresh me -- do we have a document that has

24 been executed on a waiver of extradition?

25        MR. LAX:  Yes, Your Honor, there is a document that

1  has been signed by Mr. Hanst, of course, on advice and consent

2  of counsel, and we would, you know, essentially ask the Court

3  to administer an oath and endorse that waiver.

4          THE COURT:  All right.

5          MR. LAX:  And we provided that waiver to the Court's

6  deputy earlier today.

7          THE COURT:  Is the oath already administered with

8  respect to the plea sufficient -- and to remind Mr. Hanst that

9  he's still under oath -- or is there a special oath that he

10  needs?

11          MR. LAX:  So what is in the waiver is just an

12  affirmation that Mr. Hanst certifies that on today, he

13  personally appeared before this Court and made on oath in due

14  form of law that the statements in the waiver of extradition

15  are true.

16          THE COURT:  All right.  So we can have him recite --

17  Mr. Hanst, you remain under oath, which means that the

18  penalties of perjury apply, and I don't have the document --

19  you have the document there, Mr. Lax, or does Mr. Villanueva

20  have it?

21          THE COURTROOM DEPUTY:  I have it.

22          THE COURT:  I'm going to direct the deputy clerk to

23  present that document to Mr. Hanst, and Mr. Hanst can orally

24  read the affirmation directly from the document, what he's

25  affirming to.

1       So this statement you are about to make is under

2 oath.

3       (Pause.)

4       THE COURT:  I assume, Mr. Lax, it's just that one

5 paragraph that you read?

6       MR. LAX:  I was going to suggest the affirmation --

7 there's a brief affirmation at the very end of the waiver

8 similar -- akin to Your Honor's as if an agent were affirming

9 to the statements in an affidavit just --

10      THE COURT:  Is this a signed document, Mr. Lax?

11      MR. LAX:  It is, Your Honor.

12      THE COURT:  And he's already signed it?

13      MR. LAX:  Yes, Your Honor.

14      THE COURT:  Mr. Hanst, your signature is on that

15 document that you are holding?

16      THE DEFENDANT:  Yes, Your Honor.

17      THE COURT:  All right.  And you read that document

18 before you signed it?

19      THE DEFENDANT:  Yes, Your Honor.

20      THE COURT:  And did you consult with counsel before

21 you signed it?

22      THE DEFENDANT:  Yes, Your Honor.

23      THE COURT:  Are all the statements that are made in

24 that document -- set forth in that document true and accurate?

25      THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And you are affirming that in open

2  court?

3    THE DEFENDANT:  Yes, Your Honor.

4    THE COURT:  Are you satisfied, Mr. Lax?

5    MR. LAX:  Yes, Your Honor.

6    Thank you.

7    THE COURT:  All right.  So we have the affirmation.

8    Does anybody know where that goes, Mr. Lax or

9  Mr. Villanueva?  Is that filed with the clerk?

10    MR. LAX:  I think it could be filed, and we would

11  just ask for a -- if it's filed, we'll have a copy, so I think

12  that would be sufficient.

13    THE COURT:  Is Officer Long here?

14    MR. LONG:  Good evening, Your Honor.

15    Robert Long with Pretrial Services.

16    THE COURT:  I'm going to give it to Mr. Villanueva.

17    THE COURTROOM DEPUTY:  We'll figure it out.

18    MR. LAX:  ███████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████████████████

22  ██████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24    THE COURT:  ██████████████████████████

25  ████████████████████████████████

1    MR. LAX: ▮▮▮▮▮

2    THE COURTROOM DEPUTY: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮

4    THE COURT: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7        Now, that brings up, as I am recalling, from your

8    order here, Mr. Lax, that now we have the arraignment, and I'm

9    led to believe that there is some agreed terms for bond here.

10        MR. LAX:  Yes, Your Honor.  So the parties have

11   agreed upon a $100,000 bond, which is to be secured by $10,000

12   cash on deposit or check.  I think the clerk's office is

13   closed now, so we would propose within 24 hours that check be

14   deposited.

15        THE COURT:  Yes.

16        MR. LAX:  Additional conditions, in addition to all

17   the standard ones, are that the defendant must remain in New

18   York City, the District of Colombia, Curaçao, or the

19   Netherlands, as necessary for medical purposes; that the

20   defendant avoid all contact with co-conspirators, except as

21   directed by law enforcement or in the presence of counsel; the

22   defendant not obtain other passports or other international

23   travel documents; and that he be placed under the supervision

24   of Pretrial and must report to Pretrial as directed, which I

25   understand, from speaking with Mr. Long, would be by video or

1  telephone; and, finally, that Mr. Hanst notify the Government

2  and Pretrial Services in advance of any international travel

3  and provide itineraries for that travel.

4  　　　　　THE COURT:  And, Mr. Hanst, anything about what

5  Mr. Lax has just read into the record that you don't

6  understand?

7  　　　　　THE DEFENDANT:  No, Your Honor.

8  　　　　　THE COURT:  And you agree to abide by all of those

9  terms?

10  　　　　　THE DEFENDANT:  Yes, Your Honor.

11  　　　　　THE COURT:  Now, Mr. Lax, other than the cash

12  deposit, is there any other surety that we are concerned

13  about?

14  　　　　　MR. LAX:  No, Your Honor.  Here --

15  　　　　　THE COURT:  They're personal?

16  　　　　　MR. LAX:  -- there are no U.S.-based sureties that

17  would be appropriate.

18  　　　　　THE COURT:  So the Court is satisfied on those terms

19  and is prepared to sign the bond to that effect after the

20  defendant has affixed his signature.

21  　　　　　I always say watching a district judge doing an

22  arraignment is like getting a doctor to draw blood.  Always

23  see the technician.  Less painful.

24  　　　　　All right.  What's next, if anything?

25  　　　　　MR. LAX:  Your Honor, I have two very small

1 | housekeeping matters.

2 | The first is just to note for the record that we

3 | offered to provide consular notice for Mr. Hanst, and he

4 | declined; and the Netherlands and Curaçao are not a mandatory

5 | notification country.

6 |

7 |

8 |

9 | THE COURT:

10 | MR. LAX:

11 |

12 |

13 |

14 |

15 | THE COURT:

16 |

17 | MR. LAX:

18 |

19 |

20 | THE COURT:

21 | MR. BLAIS:

22 | THE COURT:

23 |

24 |

25 |

[REDACTED]

Anything else?

MR. LAX:  Not from the Government, Your Honor.

I just wanted to thank the Court for accommodating us on this complex proceeding.

THE COURT:  We certainly thank counsel, including Mr. Rico, who was here much earlier and doesn't realize how much he should thank me for letting him go.

And we all want to thank Denise for service above and beyond the call of duty at the end of day, so we appreciate that as well.

And it's been a reminder -- and with God's will, we will get to the point where we don't need them, but it's a symbol why we should still be very careful -- we are still masked, we still have Plexiglas, so that means we still have a concern for COVID-19, and we should treat it with the respect that it deserves, and be smart, and be safe, and be strong,

1  and be well, and we will see you on the next occasion.

2            MR. LAX:  Thank you, Your Honor.

3            THE COURT:  We are adjourned.

4            MR. BLAIS:  Thank you, Your Honor.

5            (Pause.)

6            THE COURTROOM DEPUTY:  Counsel for defendant?  Just

7  one second.

8            THE COURT:  We are briefly going back on the record.

9            THE COURTROOM DEPUTY:  Counsel for both sides are

10  present, including defendant.

11            MR. LAX:  Thank you, Your Honor.

12            ███████████████████████████████

13  ██████████████████████████████████████

14  ████████████████████████

15            THE COURT:  ██████████████████████

16  ██████████████████████████████████████

17  ██████████████████████████████████████

18  ██████████████████████████████████████

19  ██████████████████████████████████████

20  ██████████████████████████████████████

21  ██████████████████████████████████████

22  ████████████████████████████

23            MR. LAX:  Thank you, Judge.

24            MR. BLAIS:  Thank you, Your Honor.

25            THE COURT:  Adjourned again.  (Matter concluded.)